UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| WILLIAM WESNER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 07 Civ. 11225 (RJS) |
| vs. | ) ) ) | |
| UBS AG, PETER A. WUFFLI, CLIVE STANDISH and DAVID S. MARTIN, | ) ) ) | |
| Defendants. | ) ) ) | |

_____)

|  |  |  |
|---|---|---|
| ROBERT GARBER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 Civ. 00969 (RJS) |
| vs. | ) ) | |
| UBS AG, PETER A. WUFFLI, CLIVE STANDISH and DAVID S. MARTIN, | ) ) ) | |
| Defendants. | ) ) ) | |

_____)

**MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL
INVESTOR GROUP'S MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF COUNSEL**

GRANT & EISENHOFER P.A.
Jay W. Eisenhofer (JE-5503)
James J. Sabella (JS-5454)
Sharan Nirmul (SN-2075)
485 Lexington Avenue
29th Floor
New York, NY  10017
Tel:     (646) 722-8500
Fax:     (646) 722-8501

MOTLEY RICE LLC
Joseph F. Rice
James M. Hughes
P. O. Box 1792 (29465)
28 Bridgeside Blvd.
Mount Pleasant, SC 29465
Tel:     (843) 216-9000
Fax:     (843) 216-9450

*Counsel for The Institutional Investor Group and Proposed Co-Lead Counsel for the Class*

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .........................................................................................3

ARGUMENT .............................................................................................................7

I.     The Related Actions Should Be Consolidated.................................................7

II    The Institutional Investor Group Should Be Appointed Lead
Plaintiff In The Related Actions .....................................................................7

      A.    The PSLRA Favors Institutional Investors Who Have a Large Financial
Interest In The Lawsuit .......................................................................8

      B.    The Institutional Investor Group Has The Largest Financial Interest Of
The Plaintiffs Who Have Come Forward In This Class ...................10

      C.    The Institutional Investor Group Satisfies The Requirements Of Rule 23 ........11

            i.    The Institutional Investor Group's Claims Are Typical Of
The Class's Claims ...............................................................12

            ii.    The Institutional Investor Group Will Adequately
Represent The Interests Of The Class...................................13

      D.    The Court Should Approve The Institutional Investor Group's Choice
Of Counsel ........................................................................................15

CONCLUSION.........................................................................................................17

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*In re Able Labs. Sec. Litig.,*
    No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006)......................................................................10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    MDL No. 02-1500, 2003 WL 102806 (S.D.N.Y. Jan. 10, 2003) ...................................10-11

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ...........................................................................................15

*In re Conagra Foods, Inc. Sec. Litig.,*
    No. 8:05CV292-LES-TDT (D. Neb. Dec. 2, 2005)..........................................................10

*Conway Inv. Club v. Corinthian Colleges, Inc.,*
    No. 2-04-cv-05025 (C.D. Cal. Nov. 1, 2004) ...................................................................10

*Cox v. Delphi Corp.,*
    No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005).........................................................10

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113 (S.D.N.Y. 2001) ......................................................................................13

*Curtis v. BEA Sys., Inc.,*
    No. C 04-2275 SI (N.D. Cal. Sept. 24, 2004) ..................................................................10

*In re Dell, Inc., Sec. Litig.,*
    No. 06-CA-726-SS (W.D. Tex. April 9, 2007)..................................................................10

*In re Dreamworks Animation SKG, Inc., Sec. Litig.,*
    No. CV 05-03966 (C.D. Cal. Nov. 7, 2005) .....................................................................10

*In re General Motors Corp. Sec. Litig.,*
    No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006) ...........................................................10

*Gesenhues v. Checchi,*
    No. 05-CIV-10653 (RJH), 2006 WL 1169673 (S.D.N.Y. May 3, 2006) .............................8

*Glauser v. EVCI Career Colleges Holding Corp.,*
    236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................9, 11

*In re The Goodyear Tire & Rubber Co. Sec. Litig.,*
    No. 05:03 CV 2166, 2004 WL 3314943 (N.D. Ohio, May 12, 2004)................................10

*Hicks v. Morgan Stanley & Co.*,
  No. 01-CIV-10071 (HB), 2003 WL 21672085 (S.D.N.Y. July 16, 2003) ......................... 12

*Kadagian v. Harley-Davidson, Inc.*,
  No. 05-C-0547 (E.D. Wis. Feb. 14, 2006) ........................................................................ 10

*Marsden v. Select Medical Corp.*,
  No. 04-4020 (E.D. Pa. Order entered October 5, 2006) .................................................. 16

*Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.*,
  No. H-06-3022 (S.D. Tex. Mar. 20, 2007) ........................................................................ 10

*Mirco Investors, LLC v. Inspire Pharms., Inc.*,
  No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006).................................................................... 10

*In re Molson Coors Brewing Co. Sec. Litig.*,
  33 F.R.D. 147 (D. Del. 2005) ........................................................................................... 10

*In re Nice Systems Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999).......................................................................................... 14

*In re Nortel Networks Corp. Sec. Litig.*,
  No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 5, 2003) ..................................... 10

*Olsen v. New York Cmty. Bancorp, Inc.*,
  No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005) ........................................................................ 10

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................. 13

*In re Olsten Corp. Sec. Litig.*,
  181 F.R.D. 218 (E.D.N.Y. 1998)....................................................................................... 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................ 12

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999)............................................................................2, 9, 12, 14

*In re Sipex Corp. Sec. Litig.*,
  No. C 05-00392 WHA (N.D. Cal. May 24, 2005)............................................................. 10

*Skwortz v. Crayfish Co., Ltd.*,
  No. 00-6766 (DAB), 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ............................. 9, 13

*South Ferry LP #2 v. Killinger*,
No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004)...........................................................10

*In re Universal Access Inc. Sec. Litig.*,
209 F.R.D. 379 (E.D. Tex. 2002).......................................................................................12

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ..................................................................................11-12

*Welmon v. Chicago Bridge & Iron Co., N.V.*,
No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006)...........................................................10

*Werner v. Satterlee, Stephen, Burke & Burke*,
797 F. Supp. 1196 (S.D.N.Y. 1992)....................................................................................7

*In re Williams Sec. Litig.*,
No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002) .............................................................10

*The Zemel Family Trust v. Philips Int'l Realty Corp.*,
205 F.R.D. 434 (S.D.N.Y. 2002) ........................................................................................9

## FEDERAL STATUTES AND RULES

15 U.S.C. § 78u-4(a)(3) ...............................................................................................*passim*

Fed. R. Civ. P. 23 ........................................................................................................*passim*

PSLRA § 21D(a)(3)(B)......................................................................................1, 9, 11, 15

## OTHER AUTHORITIES

1 H. Newberg, *Newberg on Class Actions* § 3.13 (4th ed. 2007) ..............................................12

Conference Report on Securities Litigation Reform, H.R. Rep. No. 104-369 (1995),
1995 WL 709276; S. Rep. No. 104-98 (1995), 1995 WL 372783 ...............................................2

iv

## PRELIMINARY STATEMENT

Deka International (Ireland) Ltd ("Deka-Ireland"), International Fund Management, S.A. (Luxemburg) ("IFM-Luxemburg"), Union Asset Management Holding AG ("Union"), Landesbank Berlin Investment GmbH ("LBB-Invest"); Erste-Sparinvest Kapitalanlagegesellschaft m.b.H. ("Erste-Sparinvest"), and the Arkansas Public Employees Retirement System ("APERS") (collectively referred to as the "Institutional Investor Group"), in connection with the securities fraud class action lawsuits filed against UBS AG ("UBS" or the "Company"),[1] respectively, hereby move to consolidate these related securities fraud class actions and be appointed as Lead Plaintiffs pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Institutional Investor Group further moves for approval of its selection of the law firms Grant & Eisenhofer P.A. and Motley Rice LLC, as co-lead counsel for the Class.

The relief sought by the Institutional Investor Group is precisely what the framers of the PSLRA hoped to accomplish by enacting the PSLRA's lead plaintiff provision – to have complex class actions arising under the federal securities laws controlled by large institutional investors. As Congress noted in the Statement of Managers, the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small

---

[1] The Related Actions are *Wesner v. UBS AG*, No. 07-cv-11225-RJS (S.D.N.Y. filed Dec. 13, 2007) and *Garber v. UBS AG*, No. 08-cv-000969 (S.D.N.Y. filed Jan. 29, 2008). No motion for consolidation has previously been made. The *Wesner* Complaint alleges a Class Period between March 13, 2007 and December 11, 2007, inclusive; the *Garber* Complaint alleges a Class Period between February 13, 2006 and December 11, 2007, inclusive.

amounts at stake." Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369, at 34 (1995), 1995 WL 709276; S. REP. NO. 104-98 (1995), 1995 WL 372783. The Institutional Investor Group, with billions of dollars in assets under management, is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in securities class action suits.

As detailed in the certifications submitted herewith, between February 13, 2006 and December 11, 2007, inclusive (the "Class Period") the Institutional Investor Group, combined, purchased over 9,026,311 million shares of UBS stock, suffering potential losses of over $124,359,709 in connection with its transactions.[2]  *See* Certifications filed on behalf of each member of the Institutional Investor Group ("Institutional Investor Group Certifications"), attached to the Declaration of Sharan Nirmul In Support Of The Institutional Investor Group's Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel ("Nirmul Decl.") at Ex. A, and submitted herewith. In addition to evidencing the Institutional Investor Group's significant stake in the outcome of this litigation, the Institutional Investor Group Certifications demonstrate each group member's desire to serve as lead plaintiff in this action, as well as its understanding of the attendant duties and obligations of serving in that role. *See id.*

The Institutional Investor Group believes that its financial interest in this action is the largest of any class member seeking appointment as lead plaintiff in this action. The Institutional

---

[2]  The breakdown of the Institutional Investors Group's losses is as follows: Deka-Ireland ($2,339,574); IFM-Luxembourg ($29,511,299); Erste-Sparinvest ($15,491,596); Union ($57,102,539); LBB-Invest ($19,345,222) and APERS ($569,479). In determining losses under the PSLRA, the Institutional Investor Group has used the longest class period, as alleged in the Garber Complaint, for purposes of its Motion. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) (relying on the longest class period alleged in the class actions filed against the defendants).

Investor Group is not aware of any other class member that has filed an action or filed an application for appointment as lead plaintiff that suffered greater losses due to defendants' fraud. In addition, the Institutional Investor Group satisfies each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and therefore, is qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provision, the Institutional Investor Group is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the class. Additionally, the Court should approve the Institutional Investor Group's selection of Grant & Eisenhofer and Motley Rice as co-Lead Counsel.

## STATEMENT OF FACTS

### The Institutional Investor Group

Each member of the Institutional Investor Group is a large, well-established institutional investor:

- Deka Ireland and IFM-Luxemburg are both subsidiaries of DekaBank Deutsche Girozentrale AG, one of the largest German financial institutions and financial services providers with assets under management of more than $207 billion. Deka Ireland is organized under the laws of, and has its headquarters in, Dublin, Ireland, and has €3.3 billion (or $4.30 billion) in assets under management. IFM-Luxemburg, which also has billions of dollars under management, is organized under the laws of, and has its principal place of business in, the state of Luxemburg;

- LBB-Invest, founded in 1988, is a subsidiary of Landesbank Berlin and manages approximately €14.5 billion ($21.03 billion) of assets;

- Erste-Sparinvest, based in Vienna, Austria, currently manages assets totalling $41 billion in roughly 300 different funds. This makes it the second-largest capital investment company in Austria;

- Union is based in Frankfurt am Main, Germany, and is the holding organization of the Union Investment Group, which ranks among the three leading German fund managers by market share, and has assets under management of over $170 billion; and

- APERS serves as the pension trust fund for the State of Arkansas and provides for the retirement of Arkansas State employees, as well as Arkansas county, municipal, college and university employees, and non-teaching public school employees, among others. APERS administers the retirement benefits for its approximately 65,000 active and retired members.

*See* Institutional Investor Group Certifications, Nirmul Decl., at Ex. A. Combined, the Institutional Investor Group lost in excess of $120 million dollars as a result of purchasing UBS's securities at artificially inflated prices during the Class Period. *See id*. Their losses and share purchases during the Class Period are as follows:

| Institutional Investor Group Member | Losses | Share's Purchased During Class Period |
|---|---|---|
| Deka-Ireland | $2,339,574 | 266,522 |
| IFM-Luxemburg | $29,511,299 | 2,787,200 |
| Erste-Sparinvest | $15,491,596 | 1,091,010 |
| Union | $57,102,539 | 4,038,821 |
| LBB-Invest | $19,345,222 | 811,758 |
| APERS | $569,479 | 31,000 |
| **TOTAL** | **$124, 359,709** | **9,026,311** |

The Institutional Investor Group includes members who are experienced in serving as lead plaintiffs in securities class actions.  Indeed, Deka Ireland was appointed lead plaintiff in the securities fraud class actions involving Able Laboratories, styled *In re Able Labs. Sec. Litig*., No. 05-CV-2681 (D.N.J.), and the Coca-Cola Company, styled *Selbts v. The Coca Cola Co.*, No. 05-1226 (N.D. Ga.)  *See* Deka Certification attached to the Nirmul Decl. at Ex. A.  Similarly, Union Asset Management was appointed lead plaintiff in the securities class action filed against Dell in *In re Dell, Inc. Sec. Litig.*, No. 06-CV-00726 (W.D. Tex. 2006).  *See* Union Certification attached to the Nirmul Decl. at Ex. A.

**The Claims Against UBS**

UBS is a global investment banking and securities firm providing a range of financial services including advisory services, underwriting, financing, asset management, brokerage and retail banking on a global level.  UBS is headquartered in Zurich, Switzerland with branch offices in the United States and around the world.  The Company's common stock is traded on the New York Stock Exchange, the Swiss Stock Exchange and the Tokyo Stock Exchange.  On February 13, 2006 – the beginning of the Class Period – UBS issued a press release in which it stated: "We are therefore optimistic about the outlook for UBS – for 2006 and beyond.  We now have a strong competitive position in the areas we chose to invest in – among them European wealth management, alternative investments, investment banking, prime brokerage and in Asia Pacific across business lines."  However, the Company shocked investors on August 14, 2007 when it issued its second quarter 2007 financial results, stating: "Continued difficulties in the US mortgage securities market led to lower revenues in the rates business and further losses on some of [a UBS subsidiary's] former portfolios, which contributed net negative revenues of approximately CHF 230 million in second quarter 2007."  The Company indicated that it was

having difficulties in the US mortgage securities market, and had closed its hedge fund subsidiary Dillon Read Capital Management ("Dillon Read").  On this news, the Company's shares fell $2.60 per share, or 4.81%, to close on August 14, 2007 at $51.49 per share, on unusually heavy trading volume.

On October 12, 2007, *The Wall Street Journal* reported that UBS had shut down Dillon Read in August and fired its manager, John Niblo.  On October 30, 2007 the Company announced its third quarter 2007 results, further shocking investors.  For the quarter, the Company reported an operating loss of CHF 726 million before taxes (over $624 million), resulting in a CHF 830 million net loss (over $713 million) attributable to the shareholders.  The Company further stated that its poor performance for the quarter was due mainly to the US sub-prime residential mortgage-backed securities market, which led to revenues of negative CHF 4.2 billion (over $3.6 billion) in the Investment Bank's fixed income, currencies, and commodities business.

Finally, on December 10, 2007 the Company revised its outlook for fourth quarter 2007 from an overall group profit to a loss and stated that it was possible that the Company would record a net loss for full year 2007.  The company had revised its assumptions and inputs used to value US sub-prime mortgage related positions, and stated that this would result in further write-downs of $10 billion, primarily on collateralized debt obligation and "super senior" holdings.  On this news, the Company's shares fell an additional $2.88 per share, or 5.57%, to close on December 11, 2007 at $48.78 per share, on unusually heavy trading volume.

On December 13, 2007, plaintiff in *Wesner v. UBS AG*, commenced its securities fraud class action against UBS and certain of its officers and directors under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5, 17 C.F.R. § 240.10b-5 thereunder.  The Complaints allege

6

that, during the Class Period, Defendants issued numerous statements regarding the Company's business and financial results, and that these statements were materially false and misleading because they failed to disclose the Company's failure to write down impaired securities containing sub-prime debt. Then, pursuant to the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(1), the *Wesner* plaintiff published a notice in *Business Wire*, apprising all prospective class members of the pendency of the lawsuit and the nature of the allegations, their right to seek appointment as lead plaintiff within sixty days of the publication of the notice, and the purported class period.[3] The Institutional Investors bring this motion pursuant to the Notice.

## ARGUMENT

### I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Each of the Related Actions involves class action claims on behalf of class members who purchased publicly traded securities of UBS during the Class Period in reliance on the materially false and misleading statements and omissions at all relevant times. Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Werner v. Satterlee, Stephen, Burke & Burke*, 797 F. Supp. 1196 (S.D.N.Y. 1992) (ruling consolidation appropriate in securities actions when complaints are based on same public statements and reports and there are common questions of law and fact). That test is met here. Therefore, the Related Actions should be consolidated.

### II.  THE INSTITUTIONAL INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF IN THE RELATED ACTIONS

In determining which movants to appoint as lead plaintiff, the Court must consider two factors: (1) which movant(s) have the largest financial interest in the litigation; and (2) do those

---

[3] A copy of the Notice is annexed to the Nirmul Declaration as Ex. B.

movants meet the typicality and adequacy requirements of Rule 23.  *See Gesenhues v. Checchi,* No. 05-CIV-10653 (RJH), 2006 WL 1169673, at *2 (S.D.N.Y. May 3, 2006)("The PSLRA . . . provides that the most adequate plaintiff has (1) 'the largest financial interest' in the relief sought by the class and (2) satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure").  Here, the Institutional Investor Group is comprised of exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiff in a securities class action lawsuit.  Further, the Institutional Investor Group has timely filed this motion in accordance with the statutory requirements and has the resources, expertise and the willingness to be fully involved in this litigation and to obtain the maximum possible compensation for class members.  Accordingly, the Institutional Investor Group should be appointed as Lead Plaintiff and its selection of Lead Counsel should be approved.

### A.    The PSLRA Favors Institutional Investors Who Have A Large Financial Interest In The Lawsuit

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of the notice announcing the filing of the action.  15 U.S.C. §78u-4(a)(3)(A)(i)(II); Nirmul Decl. at Ex. B (Notice of first filed complaint).  Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."  15 U.S.C. §78u-4(a)(3)(B)(i).  Consistent with its legislative history, the PSLRA provides that the court shall make a significant presumption when determining the "most capable" plaintiff:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
>> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may be overcome only by proof that the presumed lead plaintiff(s) will not fairly and adequately represent the class or is subject to unique defenses. *Id.* Courts construing this provision have held that institutional investors are presumptively the most adequate lead plaintiffs. *See, e.g.*, *Glauser v. EVCI Center Colleges Holding Corp.*, 236 F.R.D. 184 (S.D.N.Y. 2006) (institutional investor's presumption of being the most adequate was not rebutted by other movants); *The Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (discussing Congressional intent while denying lead plaintiff status to non-institutional investor plaintiff); *In re Olsten Corp. Sec. Litig.*, 181 F.R.D. 218, 220-21 (E.D.N.Y. 1998) ("By establishing the presumptive criterion that the most adequate plaintiff is the one who 'has the largest financial interest in the relief sought by the class,' PSLRA §21D(a)(3)(B)(iii)(bb), Congress intended 'to increase the likelihood that institutional investors will serve as lead plaintiffs. . . .'").

The PSLRA's lead plaintiff provision also serves to "ensure[ ] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 104 (D.N.J. 1999); *Skwortz v. Crayfish Co., Ltd.*, No. 00-6766 (DAB), 2001 WL 1160745, at *2 (S.D.N.Y. Sept. 28, 2001) ("Congress believed that [the purpose behind the PSLRA] could best be achieved by encouraging institutional investors to serve as lead plaintiffs."). As set forth herein, the Institutional Investor Group is exactly the type of large institutional investor envisioned by the Congress in enacting the PSLRA, as it satisfies all of the criteria contemplated by the PSLRA for determining the most adequate lead plaintiff. Each member of the

Institutional Investor Group is a large, well-respected financial institution that manages billions of dollars and each suffered substantial losses due to the fraud alleged in this action. As such, the Institutional Investor Group should be appointed as Lead Plaintiff in this action.

Foreign investors, such as certain members of the Institutional Investor Group, often have been appointed to serve as lead plaintiffs in PSLRA actions. *See, e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005) (observing that a foreign lead plaintiff movant was "correct in its assertion that many courts, including this one, have approved foreign investors as lead plaintiffs in cases such as this" and holding that a group of investors lead by a German investment firm was entitled to appointment as lead plaintiff because it had the largest financial interest of any movant, was otherwise adequate and typical, and would not be subject to unique defenses because of its foreign status) (citing cases).[4]

### B.    The Institutional Investor Group Has The Largest Financial Interest Of The Plaintiffs Who Have Come Forward In This Case

The Institutional Investor Group believes that it has a greater financial interest in this action than any other class member who has come forward by virtue of its approximate damages of over $29 million. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 02-1500,

---

[4]  Other cases in which courts have appointed foreign investors as lead plaintiff in securities class actions include *In re Dell, Inc., Sec. Litig.,* No. 06-CA-726-SS (W.D. Tex. Apr. 9, 2007); *Mass. Laborers' Annuity Fund v. Encysive Pharm. Inc.,* No. H-06-3022 (S.D. Tex. Mar. 20, 2007); *Welmon v. Chicago Bridge & Iron Co., N.V.,* No. 06-CV-01283 (JES) (S.D.N.Y. May 11, 2006); *In re Able Labs. Sec. Litig.,* No. 05-2681 (JAG) (D.N.J. Mar. 17, 2006); *Mirco Investors, LLC v. Inspire Pharms., Inc.,* No. 1:05CV00118 (M.D.N.C. Mar. 1, 2006); *Kadagian v. Harley-Davidson, Inc.,* No. 05-C-0547 (E.D. Wis. Feb. 14, 2006); *In re General Motors Corp. Sec. Litig.,* No. 05-CV-8088 (RMB) (S.D.N.Y. Feb. 6, 2006); *In re Conagra Foods, Inc. Sec. Litig.,* No. 8:05CV292-LES-TDT (D. Neb. Dec. 2, 2005); *In re Dreamworks Animation SKG, Inc., Sec. Litig.,* No. CV 05-03966 (C.D. Cal. Nov. 7, 2005); *Olsen v. New York Cmty. Bancorp, Inc.,* No. 04-CV-4165 (E.D.N.Y. Aug. 9, 2005); *Cox v. Delphi Corp.,* No. 1:05-CV-2637(NRB) (S.D.N.Y. June 27, 2005); *In re Sipex Corp. Sec. Litig.,* No. C 05-003932 WHA (N.D. Cal. May 24, 2005); *South Ferry LP #2 v. Killinger,* No. CV04-1599 JCC (W.D. Wash. Nov. 30, 2004); *Conway Inv. Club v. Corinthian Colleges, Inc.,* No. 2-04-cv-05025 (C.D. Cal. Nov. 1, 2004); *Curtis v. BEA Sys., Inc.,* No. C 04-2275 SI (N.D. Cal. Sept. 24, 2004); *In re: The Goodyear Tire & Rubber Co. Sec. Litig.,* No. 05:03 CV 2166, 2004 WL 3314943, at *5-6 (N.D. Ohio, May 12, 2004); *In re Nortel Networks Corp. Sec. Litig.,* No. 01 Civ. 1855, 2003 WL 22077464 (S.D.N.Y. Sept. 5, 2003); *In re Williams Sec. Litig.,* No. 02-CV-0072-H(M) (N.D. Okla. July 8, 2002). Copies of these decisions are attached as Exhibits E1through E6 to the Nirmul Decl.

2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (appointing as lead plaintiff the institutional investor with the "largest financial stake in the litigation.").

Although the PSLRA does not mandate a particular method for calculating financial interest, "courts in this Circuit have traditionally examined the following four factors in calculating that interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Glauser*, 2006 WL 1302265, at *2 (citing *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002)).  Here, the Institutional Investor Group purchased 9,026,311 shares of UBS common stock during the Class Period.  *See* Nirmul Decl. at Ex. A.  The total loss suffered by the Institutional Investor Group is $124,359,709  *See supra* at 4.  The Institutional Investor Group does not believe any other movant has a larger financial interest in this litigation.

**C.    The Institutional Investor Group Satisfies The Requirements Of Rule 23**

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA further provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C.  §78u-4(a)(3)(B)(iii)(cc).   Rule 23(a) provides that a party may serve as a class representative so long as the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – directly address the characteristics of the lead plaintiff under the PSLRA which must be satisfied.  *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216

F.R.D. 248, 252 (S.D.N.Y. 2003) (citing *In re Party City*, 189 F.R.D. at 106) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.") (citations omitted).   The remaining requirements of Rule 23 relate to the adequacy of the claims themselves and should not enter into the Court's analysis in its determination of who should serve as lead plaintiffs.   Rather, the Court should defer examination of the remaining requirements until the lead plaintiffs move for class certification.  *See In re Universal Access Inc. Sec. Litig.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) (stating that the Court should defer examination of the remaining requirements until the lead plaintiff moves for class certification). The Institutional Investor Group meet both applicable requirements.

### i.    The Institutional Investor Group's Claims Are Typical Of The Class's Claims

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that "the claims . . . of the representative parties" be "typical of the claims . . . of the class."  A proposed lead plaintiff's claims are typical of the claims of the class when the proposed lead plaintiff's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health Plans*, 182 F.R.D. at 50 (citations omitted); *Hicks v. Morgan Stanley & Co.*, No. 01-CIV-10071 (HB), 2003 WL 21672085, at *2 (S.D.N.Y. July 16, 2003) ("The typicality requirement is met when the class representative's claim 'arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.'") (citations omitted).  *See also* 1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both

the named plaintiff and the class sought to be represented, the typicality requirement is usually met regardless of minor variations in fact patterns underlying individual claims"). The Rule 23(a)(3) typicality requirement "is to ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (quoting *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

Here, the Institutional Investor Group's claims arise from the same course of conduct from which the claims of all other class members arise. As stockholders of UBS the members of the Institutional Investor Group, like other members of the class, are innocent victims of defendants' fraudulent conduct. The Institutional Investor Group's losses, like the losses suffered by other members of the class, arise from the artificial inflation of UBS's securities caused by the misrepresentations regarding the Company's exposure to U.S. subprime mortgages, were knowingly and deliberately made by the defendants. Thus, the Institutional Investor Group's claims are in all respects "typical" of the claims of the class.

### ii.    The Institutional Investor Group Will Adequately Represent The Interests Of The Class

Rule 23(a)(4)'s requirement of adequate representation is satisfied: "if (1) the class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the class are not antagonistic to one another; and (3) the lead plaintiff has a sufficient interest in the outcome to ensure vigorous advocacy." *Skwortz*, 2001 WL 1160745, at *6. *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citations omitted). Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a

willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). The adequacy of representation inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The Institutional Investor Group easily meets the adequacy requirements.

Here, the Institutional Investor Group's interests are the same as those of other class members. Like other class members, the Institutional Investor Group seeks to hold the defendants liable for the consequences of their violations of the federal securities laws. There are no facts which indicate any conflicts of interest between the Institutional Investor Group and other class members.

Further, the Institutional Investor Group has the resources and sophistication to fulfill the statutory role of lead plaintiff. The Institutional Investor Group has a large and dedicated staff with the legal, financial and organizational expertise to effectively oversee this proceeding and direct the actions of lead counsel. The resources and sophistication at the Institutional Investor Group's disposable will serve the Class well, as it will permit the Institutional Investor Group to closely monitor the litigation and prosecute the case in the Class's best interest. *See* Institutional Investor Group Certifications, Nirmul Decl., at Ex. A.

Finally, as explained below, the Institutional Investor Group has chosen Grant & Eisenhofer P.A. and Motley Rice LLC as proposed Lead Counsel for the Class.

D.      **The Court Should Approve The Institutional Investor  Group's
        Choice Of Counsel**

Pursuant to §21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v), of the PSLRA, the
Institutional Investor Group selected and retained counsel to represent the Class, subject to the
Court's approval.  This Court should not disturb Lead Plaintiffs' choice of counsel unless it is
necessary to protect the interests of the class.  *See In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir.
2002)("Selecting a lawyer in whom a litigant has confidence is an important client prerogative
and we will not lightly infer that Congress meant to take away this prerogative from securities
plaintiffs.  And, indeed, it did not. While the appointment of counsel is made subject to the
approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of
the lead plaintiff").  In that regard, the Institutional Investor Group has selected and retained the
law firms of Grant & Eisenhofer and Motley Rice as Lead Counsel for the class.

Grant & Eisenhofer P.A. is among the preeminent securities class action law firms in the
country and is currently serving as lead or co-lead counsel in several complex securities fraud
cases involving, *inter alia*,  Tyco International, Marsh & McLennan, Parmalat, Global Crossing,
Pfizer, Alstom, and Refco.  Grant & Eisenhofer achieved national recognition in representing
institutional investors, particularly public pension funds, in federal securities fraud and related
litigation.  As lead counsel, the firm has recovered and collected over six billion dollars for
shareholders.  Grant & Eisenhofer has been lead counsel in some of the largest securities class
actions in history, and in the case with the largest recovery in the long history of the Delaware
Court of Chancery.  *See* Grant & Eisenhofer biography attached to the Nirmul Decl. at Ex. C.

Motley Rice LLC is one of the nation's largest plaintiffs' law firms and also has
substantial experience in the prosecution of shareholder and securities class actions.  Motley Rice

attorneys served as counsel to 26 States Attorney General in the landmark tobacco litigation which produced one of the largest recoveries in the history of civil litigation in the United States. Motley Rice also has been appointed lead or co-lead counsel in numerous significant securities fraud class actions, involving Dell Corp., MBNA Corp., Witness Systems, and NPS Pharmaceuticals. As the district court noted when appointing Motley Rice as Co-Lead Counsel in *Marsden v. Select Medical Corp.*, No. 04-4020 (E.D. Pa. Order entered October 5, 2006), "Motley Rice LLC possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class." *See* Motley Rice biography attached to the Nirmul Decl. at Ex. D.

Accordingly, the Court should approve Institutional Investor Group's selection of Grant & Eisenhofer P.A. and Motley Rice LLC as Lead Counsel for the Class.

## CONCLUSION

In light of the foregoing, the Institutional Investor Group respectfully requests that the Court (i) consolidate the Related Actions; (ii) appoint the Institutional Investor Group to serve as Lead Plaintiff for the Class in the consolidated actions; and (ii) approve the Institutional Investor Group's selection of Grant and Eisenhofer P.A. and Motley Rice LLC to serve as Lead Counsel for the Class.

Dated: February 11, 2008                    Respectfully submitted,

                                              s/ James J. Sabella
                                            Jay W. Eisenhofer (JE-5503)
                                            James J. Sabella (JS-5454)
                                            Sharan Nirmul (SN-2075)
                                            GRANT & EISENHOFER P.A.
                                            485 Lexington Avenue, 29th Floor
                                            New York, NY  10017
                                            Tel:    (646) 722-8500
                                            Fax:    (646) 722-8501

                                            MOTLEY RICE LLC
                                            Joseph F. Rice
                                            Ann K. Ritter
                                            James H. Hughes
                                            P. O. Box 1792 (29465)
                                            28 Bridgeside Blvd.
                                            Mount Pleasant, SC 29465
                                            Tel:    (843) 216-9000
                                            Fax:    (843) 216-9450

                                            *Counsel for The Institutional Investor Group and
                                            Proposed Co-Lead Counsel for the Class*

Of Counsel:
Stephen J. Toll
Joshua S. Devore
COHEN MILSTEIN
HAUSFELD & TOLL, P.L.L.C.
1100 New York Ave.
NW, Ste 500, West Tower
Washington, D.C. 20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699