UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| IN RE UBS AG SECURITIES LITIGATION | No. 07 CV 11225 (RJS) |

**DECLARATION OF ISABELLE ROMY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

ISABELLE ROMY declares the following:

**I.   SUMMARY OF OPINION**

1. I have been asked by Defendants' counsel to examine whether a judgment issued in a class action securities litigation in the U.S. in favor of the Defendants would prevent non-U.S. resident investors who were members of the certified class of plaintiffs, but who did not actively participate in the U.S. litigation in any way, from raising the same claims against the Defendants in Swiss courts.

2. For the reasons stated below, I conclude that Swiss Courts will not give *res judicata* effect to a U.S. class action judgment against claims by Swiss resident investors who did not actively participate in the U.S. litigation.

**II.   PERSONAL QUALIFICATIONS**

3. I am a partner at the Zurich law firm Niederer Kraft & Frey AG, one of the larger business law firms in Switzerland. I was admitted to the bar of the Canton of Vaud, Switzerland, in 1991. I joined my current law firm in 1995 and I became a partner in 2003. I am registered with the Attorney's Register of the Canton of Zurich. My practice centers in the areas of international litigation, arbitration and international private law. A copy of my professional resume is attached as Exhibit 1. I submit this Declaration in support of Defendants' motion to dismiss the claims of the non-U.S. plaintiffs in the above-captioned action.

4. In addition, I am an Associate and a Titular Professor of Law teaching at the University of Fribourg (Switzerland) and at the Federal Institute of Technology in Lausanne (EPFL), Switzerland. I hold these positions since 1996. Currently, I teach a series of classes, including among other things, transnational litigation. I have been supervising several master and doctoral candidates in various areas, including transnational litigation.

5. I was a Deputy Judge at the Swiss Supreme Court from 2003 until December 2008. I was assigned to the 1st Civil Chamber (Première Cour Civile) adjudicating, among other things, cases involving contract, tort, commercial law and issues of international private law related to said topics. From 2003 until 2005, I served as a Deputy Judge, assigned to the Criminal Chamber (Cour de Cassation pénale).

6. I have authored several publications on comparative law between U.S. and Swiss law and on issues related to the recognition and enforcement of U.S. class action judgments in Switzerland.

7. I studied law at the University of Lausanne (graduating in 1986). I then completed my doctorate degree at the University of Lausanne in 1990 (PhD equivalent). Later, in connection with my Professorial degree, I was a visiting scholar at Boalt Hall School of Law, University of California at Berkeley from 1992 to 1994 and I completed my Professorial thesis ("Habilitation") at the University of Fribourg (Switzerland), graduating in 1996, on enforcement actions in environmental law and on mass tort litigation and class action under U.S. and Swiss law.

### III. BASIS FOR OPINION

8. In making this declaration, I have read the relevant sections and where necessary will refer to copies of the following documents:

(a) the Consolidated Securities Class Action Complaint ("Complaint") in *In re UBS AG Securities Litigation*, No. 07-cv-11225 (RJS) (S.D.N.Y.), filed on July 11, 2008;

(b) Defendants' Memorandum of Law in Support of Their Rule 12(b)(1) Motion to Dismiss Foreign Lead Plaintiffs' Claims, filed on November 19, 2008;

    (c)    Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Rule 12(b)(1) Motion to Dismiss Foreign Lead Plaintiffs' Claims; and

    (d)    the Amended Consolidated Securities Class Action Complaint ("Amended Complaint") filed on May 8, 2009[1].

9. For the purpose of this Declaration, I have been asked to make the following assumptions:

    (a)    Defendants will submit to the jurisdiction of the United States courts;

    (b)    Lead Plaintiffs will attempt to provide notice of the pendency of the class action litigation to putative members of the proposed class action living outside the Unites States, presumably by publication in an appropriate local newspaper and/or in the internet;

    (c)    Such notice will state that foreign investors have the possibility to opt-out of the U.S. class action litigation and, accordingly, to elect not to be bound by the result of the case; and

    (d)    The notice will further state that foreign investors who do not opt-out by a certain date will automatically be considered part of the class in the class action litigation and that their right against Defendants will be determined by the result in the class action litigation.

## IV. SWISS LAW ON RES JUDICATA AND RECOGNITION OF FOREIGN JUDGMENTS

10. In Switzerland, Swiss law governs both whether investors are allowed to bring individual suits against defendants in Swiss courts and whether a U.S. class action judgment (or settlement) would have a preclusive effect in a Swiss action.

11. Because there is no treaty between Switzerland and the United States governing the recognition and enforcement of judgments rendered by their respective courts, the relevant provisions of Swiss law concerning recognition of U.S judgments are set out in the Swiss Federal Act on International Private Law of December 18, 1987 (hereinafter "IPLA") (Ex. 2).

---

[1] The Amended Complaint refers on several occasions to the U.S. cross-border business. For the sake of transparency, I note that after I submitted my first declaration in this matter, I was asked by UBS to act as an expert witness in the John Doe Summons case filed in the United States District Court for the Southern District of Florida in February 2009, in which the IRS asked the court to order UBS to disclose to the IRS the identities of a large number of US clients (case no 1:09-CV-20423-Gold).

The present issue, namely whether a U.S. class action judgment would be recognized in Switzerland and what its binding effect would be, has not been examined by a Swiss Court yet. Treatises on the subject are scarce. I have addressed these issues in an article on "U.S. class action and Swiss international private law" published in 1999[2]. A doctoral thesis on the same topic was published in 2008 by Leandro Perucchi. I shall refer to it hereinafter where necessary for the analysis[3].

12. In Switzerland, *res judicata* (or claim preclusion) bars litigation for the same cause of action between the same parties where a prior judgment has been rendered between them. The defense of *res judicata* requires three elements: the first decision (1) must be final, (2) have been rendered between the same parties, and (3) have the same object as the subsequent suit[4].

13. Furthermore, a foreign judgment can only have a preclusive effect in Switzerland if the conditions for its recognition in Switzerland are fulfilled[5]. According to Art. 25 (a) PILA (Ex. 2), a foreign judgment will be recognized in Switzerland if (1) the foreign court rendering the decision has jurisdiction according to Swiss legal principles; (2) the decision is final; and (3) there is no ground to refuse recognition under art. 27 IPL (Ex. 2).

14. According to art. 27 IPLA (Ex. 2), a foreign decision is not recognized in Switzerland if the recognition would be incompatible with Swiss substantive public policy (*ordre public matériel*) or with one of the three rules formulated in Art. 27 § 2 IPLA (Ex. 2) (Swiss procedural public policy, *ordre public procédural*), i.e.:

> (a) the party was not duly summoned according to the law of its domicile or according to the law of its ordinary residence, unless it made an appearance in the proceedings without reservation;
>
> (b) the decision was rendered in violation of fundamental principles of Swiss

---

[2] Ex. 3 (I. Romy, Class actions américaines et droit international privé Suisse, PJA/AJP 1999, 783 seq, 791 seq.)
[3] Ex. 4 (L. Perucchi, Anerkennung und Vollstreckung von US class action-Urteilen und - Vergleichen in der Schweiz, Zurich 2008.)
[4] Ex. 5 (ATF 121 III 474 (ATF is the French official abbreviation for Reports of the Swiss Supreme Court)); Ex. 5 (ATF 123 III 16); Ex. 3 (I. Romy, in PJA 1999, 783 seq, 791 seq.).
[5] Art. 9 IPLA (Ex. 2) states this principle explicitly for the objection of litispendence. Said objection pursues the same objective as the *res judicata* objection (albeit at an earlier stage in the procedure since the objection of litispendence requires that the prior action brought abroad is still pending), the same conditions apply. This principle is also formulated in art. 27 par. 2 let. c IPLA, which applies to the case where two judgments have been issued by two different foreign courts between the same parties and for the same cause of action. Should one of said decisions be recognizable in Switzerland, it will bar recognition of the second judgment in Switzerland.

procedural law, in particular that the right to be heard was denied; or

(c) a proceeding involving the *same parties* and the same subject matter was first brought in Switzerland, or adjudicated in Switzerland, or that it was earlier adjudicated in a third country and that this decision is recognizable in Switzerland.

15. As to condition (c) above, in spite of the lack of a general definition of a "party" under Swiss law, it is recognized that a party must be *identified* and *designated by its name* and also have the autonomy to decide if, when and to which extent, he or she wants to vindicate his/her rights in justice[6]. Swiss courts will therefore examine whether the investor-plaintiff in the subsequent suit was a party to the U.S. class action procedure. Because a member of a class action may "appear" in different "roles", namely as named or unnamed or absent plaintiffs or even opt-out of the class, the Swiss court will take these three alternatives into consideration.

16. It follows from the purpose of letting each litigant choose the time and manner in which he vindicates his rights that named plaintiffs who actively participate in the U.S. class action litigation should be deemed a "party" according to Swiss law, and that the persons who chose to opt out of the class action and expressed so their intention not to be bound by the class action judgment are not "parties"[7].

17. The procedural situation of the *unnamed or absent plaintiffs* presents some analogy with the situation of a defendant since their rights are being vindicated in court without their express consent at a time they have not chosen. Therefore, a Swiss court should examine whether the *unnamed or absent plaintiffs* are bound by a class action judgment (or settlement) by applying by analogy the Swiss private international law rules applicable for recognition's purposes to determine the (indirect) jurisdiction of a foreign court upon a defendant[8].

18. According to art. 26 seq. IPLA (Ex. 2), a defendant to an action is bound by a foreign judgment provided that, in particular, (1) the foreign court had jurisdiction over the party according to the IPLA, and (2) the defendant was duly summoned according to the law of its domicile.

---

[6] Ex. 3 (Romy, PJA, 792).
[7] Ex. 3 (Romy, PJA, 793-795).
[8] Ex. 3 (Romy, PJA, 793); Ex. 4 (Perucchi agrees with this approach, see 124 seq.).

## V. SWISS RESIDENT INVESTORS WHO REMAIN PASSIVE WOULD NOT BE DEEMED A PARTY AND WOULD NOT BE BOUND BY A U.S. CLASS ACTION JUDGMENT FOR LACK OF INDIRECT JURISDICTION

19. As a first step, the Swiss court will examine, under the IPLA's requirements, whether the U.S. court had jurisdiction over the *unnamed or absent members* of the class as if such unnamed or absent members of the class were defendants to the action. According to art. 149 par. 1 let. a IPLA (Ex. 2), foreign decisions concerning claims based on the law of obligations shall be recognized in Switzerland if they have been rendered in the state in which the respondent is resident. The same rule applies for claims based on a cause of action that is not specifically listed in the IPLA (art. 26 let. a IPLA) (Ex. 2). Therefore, the application by analogy of said provision in the matter at hand would allow the Swiss court to recognize the jurisdiction of the U.S. court over the unnamed plaintiffs who have their domicile in the United States (provided that said members have been duly notified of the class action settlement in compliance with U.S. law).

20. As for *members* of the class action who are resident in Switzerland, the indirect jurisdiction of the U.S. upon them may not be based on art. 149 par. 1 let. a or 26 let. a IPLA (Ex. 2) by analogy. Therefore, the U.S. judgment would not bind them in Switzerland. However, should these Swiss resident members manifest their intention to be a party in the procedure, for instance by filing a proof of claim or other relevant documents in the U.S. procedure, then their behavior could be construed as an appearance without reservation pursuant to art. 26 let. c IPLA (Ex. 2) and as an acceptance of the jurisdiction of the U.S. court.

21. On the other hand, Swiss resident members who simply remain *passive* would not be bound by the class action judgment from a point of view of Swiss law for lack of jurisdiction.

22. As to passive class members who have their residence neither in the United States nor in Switzerland, the Swiss court will only accept jurisdiction of the U.S. court over them if the conditions set forth in art. 149 § 2 IPLA are fulfilled. Namely, should the claim be based on a contract, the place of performance of the contract has to be in the United States (art. 149 § 2 lit. a IPLA). Should the claim be based on tort, the place where the tort was committed or the effect thereof has to be in the Unites States (art. 149 § 2 lit. f IPLA). Should these conditions not be fulfilled, these members would not be bound by the U.S. judgment, for lack of jurisdiction, unless they made an appearance within the meaning of art. 26 let. c IPLA.

## VI. SWISS RESIDENT INVESTORS WHO REMAIN PASSIVE WOULD NOT BE BOUND BY A U.S. CLASS ACTION JUDGMENT WITHOUT VALID NOTICE

23. As a second step, even if the U.S. Court has jurisdiction, the Swiss Court will require that the unnamed or absent members were duly summoned according to the law of their domicile. My understanding is that U.S. class action notices usually are disseminated through media outlets. Such dissemination in Switzerland would *not* effectively bind passive Swiss resident investors to the U.S. class action judgment, for the following reasons:

24. The requirements for summons and service in international matters between the United States and Switzerland are set out in The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters of 1965 (Hague Service Convention) (Ex. 6) as well as in the relevant provisions of the Code of Civil Procedure of the particular Canton (state) where the addressee has his residence. As a rule, under the Hague Service Convention, service of process requires individual notice through the Swiss Central Authority and local Swiss Courts. The Convention is not applicable when the address of the addressee is not known (art. 1 par. 2 (Ex. 6)). This exclusion applies restrictively and requires that the authority has carried out all the searches that could be reasonably expected under the circumstances[9]. Various Cantonal Codes of Civil Procedure and Federal Statutes allow service by publication where formal service is impossible, for instance because the defendant's address is not known.

25. Providing service to the class members in Switzerland must meet the requirements of the Hague Service Convention. As a rule, *individual* notice through the Swiss Central Authority and local Swiss Courts is required. As mentioned above, service by publication remains an exception. Furthermore, publication is restricted to official newspapers (such as the Swiss official gazette) and never occurs in the local press or on the internet. Based thereon, I am of the opinion that notification through the internet or local newspapers does not constitute valid notice according to Swiss law.

26. Pursuant to Art. 27 par. 2 let. a IPLA (Ex. 2), service of process remains ineffective *if the party (the addressee) makes an appearance without reservation*. It results from said provision that, for recognition's purposes, notice through the internet or local newspapers may only be effective and valid if the addressees, i.e., the unnamed members,

---

[9] Ex. 7 (Y. Donzallaz, La notification internationale des actes de poursuite, in: Schweizerisches und internationales Zwangsvollstreckungsrecht: Festschrift für Karl Spühler, Zurich 2005, 55 seq., 67).

expressly manifest their intent to be part of the class; there must be an affirmative element that shows that the class members effectively agree to be part of the class.

27. The Swiss Federal Supreme Court held in a recent judgment that, should the addressee remain passive and the service infringe the sovereignty of the State of his residence (as service in local media or the internet would constitute such an infringement in Switzerland), then the service is void and has no effect in Switzerland, even if the defendant had actual knowledge of the action initiated against him[10]. Based on said decision and Swiss constitutional due process rules, a Swiss court would not presume that the passive unnamed class members agree to be bound by the class action judgment.

28. Finally, even if actual notice through the internet and local newspapers would be sufficient to bind the *passive* unnamed class members, which it is not, the Defendants would be deprived of the possibility to validly raise the *res judicata* objection, because, according to art. 8 of the Swiss Civil Code (Ex. 9), the burden to prove actual notice lies with the party who raises the *res judicata* objection. Here, Defendants would have the burden to prove the facts necessary to establish that the objection of *res judicata* is well-founded. In other words, Defendants would have the extremely difficult burden of proving that the class members in Switzerland have received *actual* notice of the class action litigation. It would not be up to the absent class members to show that they did not have or could not have knowledge, as Swiss law rejects the imposition on the class members of the burden to establish a negative fact, namely that they did not receive notice.

## VII. A U.S. CLASS ACTION JUDGMENT INVOLVING PASSIVE SWISS RESIDENT INVESTORS WOULD VIOLATE OTHER FUNDAMENTAL RULES OF SWISS PROCEDURE

29. According to art. 27 § 2 lit. b IPLA (Ex. 2), a Swiss Court will not recognize a foreign judgment that was rendered in violation of fundamental principles of Swiss procedural law (other than the rules on due service of process, see Art. 27 § 2 lit. a IPLA (Ex. 2)). In my opinion, a U.S. class action judgment that involves passive members who do not qualify as parties under Swiss law is incompatible with Swiss fundamental principles of procedural law for the following reasons:

30. It is a fundamental principle of Swiss *procedural* law that a claim and the right to vindicate said claim in court may not be dissociated. Accordingly, a representative may not

---

[10]   Ex. 8 (4A-161/2008, Swiss Federal Supreme Court, 1st July 2008).

vindicate the rights of a third party in court without an express assignment of claim or a power-of-attorney. Said power of attorney must be expressly given and may not be implied[11]. Moreover, the Swiss civil procedure is tailored on the traditional model of a process opposing two or more parties who vindicate or defend their own rights. For the sake of being complete, the Swiss federal legislature has enacted specific statutes that provide for some form of associative or group actions[12], but in these instances, the claimant (an association for example) is never allowed by law to claim payment of damages for the members of the association[13]. Representative actions such as monetary class actions are unknown in Switzerland and are considered foreign to the Swiss legal system.

31. Recently the issue whether class actions like procedure should be adopted in Switzerland has been publicly discussed in relation to the drafting of the new Swiss Federal Civil Procedure Act[14]. The Commission of Experts that elaborated a preliminary draft of such Act has examined said question, rejected the proposition, and concluded that a class action system is not needed in Switzerland and would not be consistent with the Swiss legal system[15]. This view was shared by the Swiss Federal government[16].

32. Because collective actions like monetary class actions are a foreign body in Swiss law, binding passive class members in Switzerland without their consent violates fundamental principles of Swiss procedural law, namely their constitutional right to be heard and the right of choosing the time, place and manner of the vindication of their rights. Such a class action judgment would not be recognized in Switzerland.

## VIII. CONCLUSION

33. Based on the above, I conclude that class members in Switzerland who remain purely passive and do not participate in a U.S. litigation in any way will not be deemed to have implicitly consented to their inclusion in the U.S. litigation class. The right to a fair process and the right to be heard protected by the Federal Constitution require that a party

---

[11] Ex. 10 (Art. 396 par. 3 CO); Ex. 11 (J. Hofstetter, Le mandat, TPS VII, Fribourg 1994, 46. It must be noted that as a rule, most of the Cantonal Codes of civil procedure request that the power of attorney be in writing): Ex. 12 (N. Jeandin, Parties au process: Mouvement et Révolution, Zurich 2003, 17).
[12] This is for instance the case in the Federal Act on Unfair Competition of 1986, art. 10 (Ex. 13).
[13] Ex. 14 (Report of the Commission of Experts concerning art. 79 preliminary draft, 46).
[14] In Switzerland, for historical reasons, each Canton has its own code of civil procedure. However, a new Federal Code of civil procedure will enter into force presumably in 2011 and will replace the cantonal regulations.
[15] Ex. 14 (Report of the Commission of Experts concerning art. 79 preliminary draft).
[16] See also Ex. 15 (Message concerning the Swiss Federal Civil Procedure Act in FF/BB 2006 p. 7224, 7290).

show its intention to be included in the relevant procedure. From a Swiss law point of view, Swiss resident passive members of a class would not qualify as parties and, for this reason, would not be bound in Switzerland by a U.S. class action judgment. Said judgment, as far as passive class members in Switzerland are concerned, would infringe Swiss procedural public policy. For these reasons, Swiss courts would reject any res judicata defense raised by the Defendants in this case.

Executed on the 24th day of September 2009.

_____
ISABELLE ROMY